### IN THE UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF ARKANSAS
### FAYETTEVILLE DIVISION

**In re: HUNTER MATTHEW BURROUGHS, Debtor**     **Case No. 5:24-bk-70106**
**Chapter 7**

**GPB DEBT HOLDINGS II, LLC**                            **PLAINTIFF**

**v.**                              **5:24-ap-07026**

**HUNTER MATTHEW BURROUGHS**                            **DEFENDANT**

### ORDER AND OPINION GRANTING IN PART AND DENYING IN PART
### MOTION FOR SUMMARY JUDGMENT

On December 31, 2024, GPB Debt Holdings II, LLC [GPB] filed a motion for summary judgment and supporting brief that included a statement of undisputed material facts and exhibits. On February 28, 2025, Hunter Matthew Burroughs [Burroughs or the debtor] filed his response to GPB's motion for summary judgment.[1] On March 14, 2025, GPB filed its reply. For the reasons stated below, the Court grants in part and denies in part GPB's motion for summary judgment.

## I. Background[2]

---

[1]  Under General Order 37, the debtor's response was due on January 28, 2025; however, the parties informally agreed that the debtor had until February 28, 2025, to respond.

[2]  The facts recited in this section were taken, largely verbatim, from GPB's statement of undisputed material facts (Dkt. No. 26), HRD's first amended state court counterclaim (Dkt. No. 26-3), the *Order on Motion to Strike for Fraud upon the Court and for Default Judgment* entered by the state court on December 28, 2020 [default judgment] (Dkt. No. 26-7), and the *Agreed Final Judgment by Judge* [agreed judgment] (Dkt. No. 26-9). These facts are therefore undisputed. To the extent the facts were taken directly from HRD's counterclaim, all allegations contained therein were deemed admitted upon entry of the default judgment, as discussed *infra*; because the debtor did not dispute the facts in GPB's statement of undisputed material facts, those facts are considered undisputed for purposes of summary judgment pursuant to Federal Rule of Civil Procedure 56(e) ("[i]f a party fails to properly support an assertion of fact or fails to properly address another

In 2017, Burroughs owned and operated two companies, Common Compounds, Inc. [CCI] and EzPharmaRX [EZ], which he agreed to sell to Health Right Discoveries, Inc. [HRD] for $6,100,000. Burroughs and HRD memorialized the terms of the sale in a Securities Purchase Agreement dated August 17, 2017 [SPA]. The SPA provided that HRD would pay Burroughs $3,600,000 by wire transfer and execute and deliver a promissory note for the balance of the purchase price at closing. The SPA also provided that the companies would have no less than $263,400 in net working capital at closing. Additionally, the SPA contained a representation by Burroughs that the companies had not violated any federal laws, and included a non-compete agreement which prohibited Burroughs from competing, directly or indirectly, with HRD.

After the closing on September 29, 2017, a dispute arose between Burroughs and HRD regarding, among other things, the actual amount of net working capital left by Burroughs at closing. On August 18, 2018, Burroughs filed suit against HRD in the Circuit Court of the Eleventh Judicial Circuit, Miami-Dade County, Florida [Florida or state court][3] for breach of contract and other causes of action. Burroughs amended his complaint against HRD on September 25, 2018, to add a fraud claim. On February 25, 2019, HRD answered Burroughs's first amended complaint and filed a counterclaim against Burroughs for breach of contract, breach of implied covenant of good faith and fair dealing, fraud in the inducement, and indemnification. On April 3, 2019, Burroughs filed his answer and affirmative defenses to HRD's counterclaim. On April 29, 2020, Burroughs filed his second amended complaint against HRD and, the same day, HRD filed its first amended counterclaim against Burroughs, adding causes of action for breach

---

party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."); and, the factual findings made by the state court in the default judgment are binding on this Court. *See Hageman v. Barton*, 817 F.3d 611, 614 (8th Cir. 2016) ("[t]he *Rooker-Feldman* doctrine precludes lower federal courts from exercising jurisdiction over actions seeking review of, or relief from, state court judgments."); *see also Jewell v. Lewis* (*In re Lewis*), 637 B.R. 832, 851 (Bankr. W.D. Ark. 2022) (accepting a state court judgment "as is" and finding "[i]t is a final and binding judgment on issues directly related to the factual predicates of the [c]laimants' effort to deny dischargeability of debt[]" under the Full Faith and Credit Act, 28 U.S.C. § 1738).

[3] GPB also references the state court as the "Miami court."

of express warranties and representations, breach of confidentiality and non-compete agreements, and tortious interference with business relationships. On May 19, 2020, Burroughs filed his answer and affirmative defenses to HRD's amended counterclaim, and on August 4, 2020, HRD filed its answer and affirmative defenses to Burroughs's second amended complaint.

The parties engaged in considerable discovery in the state court litigation, exchanging written discovery and taking depositions. On October 24, 2019, Burroughs sat for his first deposition, during which his then-attorney advised him not to answer questions relating to his alleged breach of the confidentiality and non-compete agreements. On May 14, 2020, HRD filed a motion to compel and for sanctions, asking the state court to order Burroughs to sit for another deposition and respond to the questions he had been instructed not to answer during his first deposition. On June 7, 2020, the state court granted HRD's motion in part and ordered Burroughs to appear for a second deposition. Between his first and second depositions, Burroughs produced documents in response to HRD's requests for production. On September 24, 2020, Burroughs appeared for his second deposition.

Burroughs's actions during the discovery process, his testimony at the second deposition, and his interrogatory responses resulted in HRD filing a *Motion to Strike Pleadings for Fraud Upon the Court and for Default Judgment* on November 2, 2020 [motion to strike] in state court. In its motion to strike, HRD alleged that Burroughs had perpetrated a widespread fraud on the state court by doctoring emails produced in response to HRD's request for production, withholding documents responsive to HRD's request for production, destroying evidence, giving false interrogatory responses, and committing perjury during his second deposition on September 24, 2020. On December 9, 2020, Burroughs filed an errata sheet for his September 24, 2020 deposition, in which he modified 192 of the responses he had given during his deposition. On December 15, 2020, the state court held an evidentiary hearing on the motion to strike [December 15 hearing].

3

Burroughs appeared with counsel at the December 15 hearing on HRD's motion to strike. The transcript from Burroughs's September 24, 2020 deposition and the associated errata sheet were entered into evidence by stipulation of counsel. HRD called Burroughs as a witness, but he asserted his Fifth Amendment privilege against self-incrimination and refused to answer questions. On December 28, 2020, the state court entered its *Order on Motion to Strike for Fraud upon the Court and for Default Judgment* [default judgment]. In the default judgment, the state court made several findings of fact related to Burroughs's misconduct during the discovery process. Specifically, the state court found that: (1) Burroughs intentionally doctored several critical emails that he then produced in response to HRD's requests for production; (2) Burroughs intentionally withheld document that were responsive to HRD's requests for production; (3) Burroughs intentionally destroyed evidence relevant to the state court case; (4) Burroughs intentionally gave false answers in response to HRD's first set of interrogatories; and (5) Burroughs intentionally gave false and perjurious testimony at his September 24, 2020 deposition. The court's findings were based on Burroughs's lack of credibility, the admissions that Burroughs made in the errata sheet, adverse inferences the court drew from Burroughs's invocation of the Fifth Amendment during the hearing, and the court's independent comparison of certain documents in the case. The court rejected Burroughs's contention that he "lied because [he] didn't want to confuse the real issue in this case," which Burroughs argued was HRD's principal not paying him the amount that had been agreed upon by the parties. The court found that Burroughs's fraud was pervasive and permeated the entire case.

In the default judgment, the state court found by clear and convincing evidence that Burroughs intentionally set in motion a scheme that was designed to thwart the orderly administration of justice and that he committed fraud upon both the court and HRD. As a result, the court ordered Burroughs to pay the reasonable attorney fees and costs incurred by HRD in connection with Burroughs's September 24, 2020 deposition. In addition, the court struck the claims Burroughs asserted against HRD in his second amended complaint and entered judgment against Burroughs on those claims. For the same reasons, the court struck Burroughs's answer and affirmative defenses to HRD's

4

counterclaim and entered judgment on liability against Burroughs on HRD's counterclaim.  Because the counterclaim sought unliquidated damages, the court stated in the default judgment that it would conduct a trial on damages at a later time.

The day before the trial on damages was scheduled to commence, the parties presented the state court with an *Agreed Final Judgment by Judge* [agreed judgment or judgment] which stated in relevant part:

> Counter-Plaintiff, HEALTH-RIGHT DISCOVERIES, INC. ("Health-Right") . . . hereby recovers damages and Final Judgment is hereby entered against Counter-Defendant, HUNTER MATTHEW BURROUGHS ("Burroughs") . . . in the total amount of Eight Hundred Thousand ($800,000.00) and xx/100 U.S. Dollars, inclusive of all court costs and taxable attorneys' fees which amount shall bear interest from the date hereof until paid at the statutory rate established pursuant to Section 55.03, Florida Statutes, for which sum let execution issue forthwith[.]

(Dkt. No. 26-9).  The state court judge entered the agreed judgment on May 30, 2022.[4]

Three months prior to the entry of the agreed judgment in Florida, on February 28, 2022, a twelve-count criminal indictment was filed against Burroughs in the United States District Court for the Western District of Arkansas.  On September 20, 2023, Burroughs entered into a plea agreement with the United States Department of Justice, in which he agreed to plead guilty to one count of conspiracy in violation of 18 U.S.C. § 371 in exchange for the dismissal of all counts of the pending indictment.  According to the plea agreement, Burroughs admitted that beginning in or around 2011 and continuing through September 28, 2017, he knowingly and willfully devised and executed a scheme using CCI—one of the companies Burroughs sold to HRD—to defraud the Department of Labor and private insurers, and knowingly and illegally paid remuneration (kickbacks) to physicians who contracted to sell CCI medications, and knowingly caused CCI to furnish medications to healthcare providers and bill for medications prescribed even when he had actual knowledge the healthcare providers were dispensing medication in violation of state laws.  On January 29, 2024, the United States District Court for the Western District

---

[4] On October 18, 2022, HRD domesticated its judgment against Burroughs in Benton County, Arkansas, and on October 19, 2023, HRD assigned the judgment to GPB.

of Arkansas entered a judgment finding Burroughs guilty of violating 18 U.S.C. § 371 pursuant to the terms of the plea agreement, sentencing him to forty-eight months in a federal penitentiary, and ordering him to pay $3,525,219.77 in restitution to the U.S. Department of Labor, Walmart, and CNA Insurance.

On January 25, 2024 (four days before the entry of the criminal judgment), Burroughs filed his chapter 7 case.  GPB filed this adversary proceeding on April 22, 2024.  In its complaint, which was amended on August 12, 2024, GPB seeks a determination that the Florida judgment (comprised of the default judgment and the agreed judgment) obtained by its predecessor in interest, HRD, is nondischargeable under 11 U.S.C. § 523(a)(2) and 11 U.S.C. § 523(a)(6).  On September 11, 2024, the debtor filed his answer to GPB's amended complaint.  On December 31, 2024, GBP filed its motion for summary judgment which, together with the debtor's response and GPB's reply, is now before the Court.

## II. Summary Judgment

Federal Rule of Bankruptcy Procedure 7056 provides that Federal Rule of Civil Procedure 56 applies in adversary proceedings.  Rule 56 states that summary judgment shall be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The burden is on the moving party to establish the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Canal Ins. Co. v. ML & S Trucking, Inc.*, No. 2:10-CV-02041, 2011 WL 2666824, at *1 (W.D. Ark. July 6, 2011) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); and *Nat'l Bank of Com. of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing to former Fed. R. Civ. P. 56(c)).  The burden then shifts to the non-moving party, who must show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B).  The non-moving party is not required to present a defense to an insufficient presentation of facts by the moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161 (1970) (quoting 6 J. Moore, Fed. Prac. 56.22(2), pp. 2824-25 (2d ed. 1966)).

6

However, if the non-moving party fails to address the movant's assertion of fact, the court may consider the fact undisputed. Fed. R. Civ. P. 56(e)(2). When ruling on a summary judgment motion, the court must view the facts in the light most favorable to the non-moving party and allow that party the benefit of all reasonable inferences to be drawn from the evidence. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212-13 (8th Cir. 1997); *Ferguson v. Cape Girardeau Cnty.*, 88 F.3d 647, 650 (8th Cir. 1996).

### III. Synopsis of the Parties' Summary Judgment Arguments

According to GPB, Burroughs carried out two distinct but connected courses of fraudulent conduct prior to filing his bankruptcy case: the "pre-litigation fraud and misconduct" that formed the basis for HRD's counterclaim against Burroughs in state court; and the discovery-related "litigation fraud" that resulted in the state court striking Burroughs's answer to HRD's counterclaim and entering a default judgment in HRD's favor. GPB argues that the default judgment conclusively established Burroughs's liability on all causes of action alleged in HRD's counterclaim. GPB contends that the subsequent agreed judgment liquidated HRD's damages and established Burroughs's debt to HRD in the amount of $800,000. GPB's contends that because Burroughs's liability to HRD has already been determined by the state court, the "[d]ebtor is collaterally estopped from raising any defense to GPB's dischargeability action that were raised, or could have been raised, in the state court proceeding and decided by the Miami court. As such, the $800,000 judgment is nondischargeable under 11 U.S.C. § 523(a)(2)(A) and (a)(6), warranting entry of summary judgment in favor of GPB." (Dkt. No. 27.)

In response, Burroughs argues that the state court judgments (both default and agreed) are not entitled to preclusive effect in this adversary proceeding because the elements required for the application of collateral estoppel are not satisfied as to § 523(a)(2)(A). Burroughs contends that summary judgment is inappropriate because "the fraud found by the Florida [c]ourt only applied to the [d]ebtor's actions within the discovery process. There remain genuine triable issues about fraud in procuring the [d]ebtor's contract with HRD, the existence of HRD's justifiable reliance, and the composition of the $800,000 settlement agreement between the [d]ebtor and HRD/GPB." (Dkt. No. 28.) Burroughs

did not address § 523(a)(6) in his response to GPB's motion for summary judgment, except to state that determining whether there was a willful and malicious injury requires a "fact-intensive analysis, and no facts were ever presented [by GPB] to be analyzed." (Dkt. No. 28.)

## IV.  Collateral Estoppel

The doctrine of collateral estoppel precludes a court from conducting further proceedings on issues that have been litigated and ruled upon previously.  *Fischer v. Scarborough* (*In re Scarborough*), 171 F.3d 638, 641 (8th Cir. 1999).  The appropriate standard of proof under 11 U.S.C. § 523 for dischargeability exceptions is the ordinary preponderance of the evidence standard.  *Grogan v. Garner*, 498 U.S. 279, 291 (1991).  According to the Supreme Court, "if nondischargeability must be proved only by a preponderance of the evidence, all creditors who have secured fraud judgments, the elements of which are the same as those of the fraud discharge exception [in bankruptcy], will be exempt from discharge under collateral estoppel principles."  *Id.* at 285.  Therefore, if the elements required under § 523(a)(2)(A) or (a)(6) were proved in state court, the Court must grant GPB's motion for summary judgment as to non-dischargeability.  In determining whether the state court judgment is entitled to preclusive effect, the Court must apply Florida law. *See In re Scarborough*, 171 F.3d at 641 (stating that the court must look to the substantive law of the forum state in applying collateral estoppel).

In Florida, four elements must be satisfied in order to apply the doctrine of collateral estoppel:

> (1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue in the prior litigation must have been 'a critical and necessary part' of the judgment in the first action, and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Aronowitz v. Home Diagnostics, Inc.*, 174 So. 3d 1062, 1066 (Fla. Dist. Ct. App. 2015) (citations omitted).  The Court will separately discuss the elements of collateral estoppel in relation to each cause of action alleged by GPB in this adversary proceeding.

### A.  11 U.S.C. § 523(a)(2)(A)

To satisfy the first element, the issue at stake in this adversary proceeding must be identical to the issue in the state court proceeding. *Id.*  Section 523(a)(2)(A) provides for the non-dischargeability of debts

> for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A).  For GPB to prevail under this subsection, it must prove by a preponderance of the evidence that:

> (1) that the debtor made a representation; (2) that at the time the debtor knew the representation was false; (3) that the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) that the creditor justifiably relied on such representation; and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representation having been made.

*Merchants Nat'l Bank of Winona v. Moen* (*In re Moen*), 238 B.R. 785, 790 (B.A.P. 8th Cir. 1999) (citing *In re Ophaug*, 827 F.2d 340 (8th Cir. 1987), as supplemented by *Field v. Mans*, 516 U.S. 59 (1995)).


In Count III of its first amended counterclaim, HRD alleged fraud in the inducement. Under Florida law, fraud requires proof by a preponderance of the evidence.[5]  *See Wieczoreck v. H & H Builders, Inc.*, 475 So. 2d 227, 228 (Fla. 1985) (answering question certified to the court regarding the appropriate burden of proof for fraud).  To prove fraud in the inducement, HRD was required to allege: "(1) [a] misrepresentation of a material fact; (2) [t]hat the representor knew or should have known of the statement's falsity; (3) [t]hat the representor intended that the representation would induce another to rely on it; and (4) [t]hat the plaintiff suffered injury in justifiable reliance on the representation."

---

[5]  An exception to the preponderance burden of proof for fraud occurs when there is fraud on the court, which "must be established by clear and convincing evidence."  *Goga v. Publix Supermarkets, Inc*., 383 So. 3d 490, 493 (Fla. Dist. Ct. App. 2024) (citing *Arzuman v. Saud*, 843 So. 2d 950, 952 (Fla. Dist. Ct. App. 2003)).

*Output, Inc. v. Danka Bus. Sys., Inc.*, 991 So. 2d 941, 944 (Fla. Dist. Ct. App. 2008). In paragraphs eighty-one through eighty-four of its first amended counterclaim, HRD made the allegations required to support a claim of fraud in the inducement:

> 81. Burroughs made a series of material misstatements of fact to Health-Right, including that his proposed formula for estimating net working capital at closing had been created by the accountants, that despite his cash withdrawals he would deliver the Companies to Health-Right with net working capital of $263,400, that the insurance net receivable had previously been included in the Companies' balance sheets as a current asset, that there were "no events, situations, or conditions that might give rise to litigation, claim, or dispute resolution," that there were no "citations, notices received from government or foreign agencies including agencies having jurisdiction over development, manufacture and marketing of the Company's present and planned products," that there were no "pending or threatened investigations and governmental proceedings," and that there were no "audits, reports or correspondence with government agencies."

> 82. Burroughs knew that the statements were false when he made them.

> 83. Burroughs intended that Health-Right rely and act on these false statements.

> 84. Health-Right justifiably relied on the false statements and has suffered damages as a direct and proximate result.

(Dkt. No. 26-3.) Based on a comparison of the elements required to prove that a debt is nondischargeable under § 523(a)(2)(A) and those required to prove fraud in the inducement under Florida law, the Court finds that the first element of collateral estoppel is met. The issue at stake in state court was "functionally identical" to the issue in this adversary proceeding. *See Smith v. Beeson* (*In re Smith*), 128 B.R. 488, 490-91 (S.D. Fla. 1991).

To satisfy the second element of collateral estoppel, the issue must have been "actually litigated" in state court. *Aronowitz*, 174 So. 3d at 1066. The debtor argues that this element is lacking because

> . . . the Florida Court found that the Debtor perpetrated fraud on the Court by intentionally doctoring critical pieces of evidence, namely emails suggesting that the Debtor acted to conceal his involvement in

> post-contract competition against HRD.  As a sanction for his discovery violation, the Court struck the Debtor's claims and entered judgment against the Debtor[] on HRD's counterclaim.
>
> The issue before the Florida Court was the Debtor's fraudulent abuse of the discovery process.  The issue before the Bankruptcy Court under 523(a)(2)(A) concerns whether the Debtor fraudulently induced HRD to enter into the contract for the sale of the Debtor's healthcare companies through a fraudulent misrepresentation intended to deceive HRD and whether HRD justifiably relied on the misrepresentation.  That issue was not adjudicated by the Florida Court.[6]

(Dkt. No. 28.)  According to the debtor,

> [a]t no point did the Florida Court find that the Debtor fraudulently induced HRD to enter into the sales agreement to purchase two healthcare companies for $6.1 million, nor did the Florida Court consider or find fraudulent the contingency that the Debtor deliver the companies at closing with $263,400.00 in net working capital.

(Dkt. No. 28.)  The Court recognizes that the type of fraud the debtor committed during discovery is different than fraud in the inducement as alleged in HRD's counterclaim. The two frauds have different elements and require different burdens of proof.  The Court also acknowledges that the only trial on the merits in state court was about the litigation fraud that occurred during discovery.  After the trial, the state court found by clear and convincing evidence that the debtor had committed fraud on the court (and HRD) during discovery.  It was this finding that resulted in the court striking the debtor's answer to HRD's counterclaim and entering a default judgment in HRD's favor on its pre-litigation claims against the debtor.

However, the debtor's contention that fraud in the inducement was not actually litigated overlooks the legal effect of the default judgment.  While it is true that the state court did not hold a trial on the merits of HRD's counterclaim, the absence of a trial does not mean that the issue of fraud in the inducement was not adjudicated by the state court.  To the contrary, "[a] default judgment satisfies the actually litigated element under Florida

---

[6]  The Court notes that the debtor's argument here also appears to relate to the first element of collateral estoppel—whether the issue in state court was identical to the issue in this adversary proceeding.

collateral estoppel law." *Howard Alts. Inc. v. Bentov* (*In re Bentov*), 514 B.R. 907, 913 (Bankr. S.D. Fla. 2014); *Lasky v. Itzler* (*In re Itzler*), 247 B.R. 546, 555 (Bankr. S.D. Fla. 2000) ("under Florida law, even a pure default judgment, which arose from no participation of the defendant, is sufficient to meet the 'fully litigated' element of collateral estoppel.")  Therefore, even had the default judgment in this case been a "pure" default, meaning that it resulted from the debtor's failure to participate in the state court proceedings, it would meet the "actually litigated" requirement under Florida law.  Here, however, the default judgment against Burroughs was not a pure default but was a "penalty default" entered to sanction Burroughs for his fraud and misconduct during discovery.

"Courts assessing the preclusive effect of prior judgments have 'distinguish[ed] between "true" default judgments where the defendant failed to answer the complaint from "penalty" default judgments after a [d]efendant had filed an answer.'"  *Dardinger v. Dardinger* (*In re Dardinger*), 566 B.R. 481, 496–97 (Bankr. S.D. Ohio 2017) (quoting *Trentadue v. Zimmerman* (*In re Zimmerman*), No. 15–3093, 2016 WL 929264, at *5 (Bankr. N.D. Ohio Mar. 10, 2016) and citing *Rally Hill Prod., Inc. v. Bursack*, (*In re Bursack*), 65 F.3d 51, 54 (6th Cir. 1995) (differentiating a "true default judgment" from a situation in which the defendant had, among other things, filed an answer and participated in discovery but failed to appear at trial and holding that, in the latter situation, the issues were actually litigated under applicable state law); *Anderson v. Fisher* (*In re Anderson*), 520 B.R. 89, 95 (B.A.P. 6th Cir. 2014) (drawing a parallel to *Bursack* and affirming bankruptcy court's decision to give preclusive effect to penalty default judgment under applicable state law); *Wolstein v. Docteroff* (*In re Docteroff*), 133 F.3d 210, 215 (3d Cir. 1997) ("[t]his is not a typical default judgment where a defendant neglects or elects not to participate in any manner . . . [t]o the contrary, for several months, [the defendant] participated extensively in the lawsuit."); *Gober v. Terra + Corp.* (*In re Gober*), 100 F.3d 1195, 1204–05 (5th Cir. 1996) (distinguishing the defendant's post-answer default from a no-answer default and noting that the defendant "had the right to participate in the damages hearing and contest the extent of his culpability, even though he could not contest liability per se"); and *Bush v. Balfour Beatty Bahamas, Ltd.*

(*In re Bush*), 62 F.3d 1319, 1324 (11th Cir. 1995) (declining to give the defendant "a second bite at the apple" after default was entered against him for obstructive conduct).

In *Herbstein v. Bruetman*, the United States District Court for the Northern District of Illinois affirmed the bankruptcy court's ruling that the issue before the bankruptcy court in the adversary proceeding had been actually litigated due to the penalty default judgment entered against the debtor (Dr. Bruetman) in state court. The bankruptcy court applied collateral estoppel to preclude further litigation of the issue and granted summary judgment in favor of the creditor. On appeal, the District Court found that

> [i]n this atypical setting for default judgment, where Dr. Bruetman participated extensively then failed to comply with an express court order issued multiple times at a risk of incurring default, we agree with the Bankruptcy Court and the Third, Ninth and Eleventh Circuits that Dr. Bruetman should not now be able to sidestep the collateral estoppel doctrine and litigate an issue in this forum that was forestalled in New York due solely to Dr. Bruetman's decisions. Dr. Bruetman is not entitled to a second bite at the apple. The issues underlying the New York default judgment were "actually litigated" for purposes of the collateral estoppel doctrine. To hold otherwise would "give [Bruetman] who abuse[d] the processes and dignity of the court an undeserved second bite at the apple." *Docteroff*, 133 F.3d at 215.

*Herbstein v. Bruetman*, 266 B.R. 676, 685 (N.D. Ill. 2001). Although any default judgment would have been sufficient under Florida law to find that the issue was actually litigated, such a finding is especially warranted here because the default judgment entered against Burroughs was a penalty default judgment, eliminating any potential due process concerns and ensuring that the debtor is not given "an undeserved second bite at the apple." *See In re Dardinger*, 566 B.R. at 496; *Herbstein*, 266 B.R. at 685. For all these reasons, the Court finds that the issue was actually litigated in state court, satisfying the second element of collateral estoppel.

To meet the third element of collateral estoppel, the determination of the issue in the prior litigation must have been a "critical and necessary" part of the judgment in the first action. *Aronowitz*, 174 So. 3d at 1066. "An issue is a critical and necessary part of the prior proceeding where its determination is essential to the ultimate decision." *Provident*

*Life & Accident Ins. Co. v. Genovese*, 138 So. 3d 474, 478 (Fla. Dist. Ct. App. 2014) (citing *Porter v. Saddlebrook Resorts, Inc.*, 679 So. 2d 1212, 1215 (Fla. Dist. Ct. App. 1996)).  Because HRD's counterclaim contained multiple counts against the debtor, the Court must determine whether fraud in the inducement was a critical and necessary part of the default judgment.

When a default judgment is entered on a multi-count complaint and the default judgment does not refer to any specific count, courts are divided on whether any particular count can be deemed critical and necessary to the judgment.  *In re Bentov*, 514 B.R. at 914 (citing *Dimmitt & Owens Fin., Inc. v. Green (In re Green)*, 262 B.R. 557 (Bankr. M.D. Fla. 2001)).  In *In re Green*,

> a default judgment was entered against the debtor in a multi-count complaint with a fraud count and a breach of contract count. That Florida state court final judgment also did not refer to any particular count and simply entered a money judgment.
>
> Judge Glenn denied the judgment creditor's motion for summary judgment in an adversary proceeding seeking to except the judgment debt from discharge, finding that collateral estoppel did not apply because the plaintiff could not establish that the fraud count was "critical and necessary" to the state court final judgment. Judge Glenn stated the following:
>
> Even if all of the allegations in a complaint are deemed established, however, this Court cannot conclude that allegations regarding fraud are a "critical and necessary" part of a simple default judgment in those cases in which both fraud counts and non-fraud counts were asserted in the state court complaint and there is no way to distinguish which count is the basis for the judgment.

*In re Bentov*, 514 B.R. at 914 (citing *In re Green*, 262 B.R. at 564).  In *Bentov*, the state court complaint contained two counts: one for breach of contract and one for fraud.  After striking Mr. Bentov's answer, the state court entered a general default judgment that referenced neither breach of contract nor fraud.  In determining whether the state court default judgment should be given preclusive effect in a dischargeability proceeding, the *Bentov* court disagreed with the *Green* court's analysis of "critical and necessary" in the context of a general default judgment on a multiple count complaint.  In rejecting the

14

*Green* court's analysis, the *Bentov* court adopted the reasoning of the court in *In re Vickers*, which dealt with the same issue and was decided a year prior to *In re Green*.  *See In re Bentov*, 514 B.R. at 914 (citing *Lang v. Vickers* (*In re Vickers*), 247 B.R. 530 (Bankr. M.D. Fla. 2000)).  The *Bentov* court stated that,

> Judge Proctor concluded [in *Vickers*] that because every allegation in the Florida state court complaint before him, including the fraud claim, "was conclusively established as true by entry of the default judgment . . . the Court finds the elements of common law fraud to be critical and necessary to the state court default judgment."  *Vickers*, 247 B.R. at 536.

> This Court believes that Judge Proctor got it right. A default judgment is not like a judgment based on a jury verdict where a complaint has multiple counts and the jury makes no specific finding on the fraud count.  Florida law instructs that a default establishes the truth of all allegations in the complaint.  In this Court's view it is wrong and illogical to say that a court cannot determine which count forms the basis for a default judgment, because when a judgment stems from a default, each count is proven.

*In re Bentov*, 514 B.R. at 914.

This Court agrees with and adopts the reasoning of the *Bentov* court.   When the state court entered the default judgment, HRD's allegations against the debtor—including those necessary to establish fraud in the inducement—were deemed admitted.  *See Rich v. Spivey*, 922 So. 2d 326, 327 (Fla. Dist. Ct. App. 2006) ("[a] default admits all well-pleaded allegations of a complaint . . . ."); and *Nourbakhsh v. Gayden* (*In re Nourbakhsh*), 162 B.R. 841, 844 (B.A.P.  9th Cir. 1994) (finding under Florida law that a default judgment conclusively establishes the truth of all material allegations contained in the complaint).  For these reasons, the Court finds that fraud in the inducement was a critical and necessary part of the default judgment against Burroughs, satisfying the third element of collateral estoppel.

To meet the fourth element of collateral estoppel, "the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding."  *Aronowitz*, 174 So. 3d at 1066.  The Court finds that this element is also satisfied.  It was Burroughs that initiated the litigation in state court and the Florida court's docket reflects that he participated in the litigation with HRD for a period of

years.  (Dkt. No. 26-2.)  Had Burroughs not committed fraud on the court and HRD during discovery, the issue would have proceeded to a trial on the merits.  Under circumstances similar to those before this Court, the court in *In re Docteroff* found that the defendant had enjoyed a full and fair opportunity to litigate despite his answer being stricken and a default judgment being entered against him:

> Docteroff asserts that he did not actually litigate any issue in the previous lawsuit because the judgment was not a determination on the merits but was entered against him by default as a sanction for his bad-faith conduct in discovery.  We reject Docteroff's contention.  *Docteroff had every opportunity to fully and fairly litigate any relevant issue in the district court* in Washington where Wolstein sued him in the federal court, charging him with fraud in the diversion of progress payments on the construction of the Lady Iris.  Docteroff simply elected not to comply with court orders. This is not a typical default judgment where a defendant neglects or elects not to participate in any manner because of the inconvenience of the forum selected by the plaintiffs, the expense associated with defending the lawsuit, or some other reason.  *See In re Bush*, 62 F.3d 1319, 1324 (11th Cir. 1995); 18 Charles Alan Wright, Arthur R. Miller and Edward H. Cooper, Federal Practice and Procedure § 4442, at 375 & n. 3 (1981).  To the contrary, for several months, Docteroff participated extensively in the lawsuit.  He filed an answer, noticed Wolstein's deposition, engaged several lawyers, including local counsel, filed papers with the court, and corresponded with opposing counsel.  *See* [*In re Bush*], 62 F.3d at 1324 (noting defendant's participation in lawsuit which ultimately ended with default judgment entered against him as sanction).  Apparently, Docteroff realized the meritlessness of his position and decided to frustrate orderly litigation by willfully obstructing discovery.

*In re Docteroff*, 133 F.3d at 215 (emphasis added).  Similar to Mr. Docteroff, the Court finds that Burroughs had a full and fair opportunity to litigate the issue in the prior proceeding.  Due solely to Burroughs's own fraud and misconduct, that opportunity was ultimately taken away by the state court.  However, the fact that Burroughs threw away his chance to litigate by committing fraud during discovery does not alter the fact that he was afforded the opportunity to do so.  Therefore, the Court finds that the fourth and final element of collateral estoppel is met as to liability on GPB's claim under § 523(a)(2)(A).[7]

---

[7]  To the extent that Florida cases (or Eleventh Circuit cases interpreting Florida law) sometimes include additional collateral estoppel elements, the Court finds that the

The debtor correctly asserts that, under Florida law, "[a] court may decline to apply collateral estoppel where its application would result in manifest injustice." (Dkt. No. 28); *and see Hartnett v. Mustelier* (*In re Hartnett*), 330 B.R. 823 (Bankr. S.D. Fla. 2005)

---

additional elements are also satisfied. Some Florida cases state that the parties in the later proceeding must be identical to the parties in the prior proceeding in order for collateral estoppel to apply. *See, e.g., Lucky Nation, LLC v. Al-Maghazchi*, 186 So. 3d 12, 14 (Fla. Dist. Ct. App. 2016) (stating that for collateral estoppel to apply, "the parties in the two proceedings must be identical.") However, because HRD assigned its debt to GPB, the Court finds that GPB is in privity with HRD and collateral estoppel still applies. *See Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) ("nonparty preclusion may be justified based on a variety of pre-existing 'substantive legal relationship[s]' between the person to be bound and a party to the judgment . . . [q]ualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and *assignee and assignor*.") (emphasis added); and *Southeastern Fid. Ins. Co. v. Rice*, 515 So. 2d 240, 242 (Fla. Dist. Ct. App. 1987) ("[c]ollateral estoppel is a complete defense to the relitigation of an issue when there is an identity of parties *or their privies*, an identity of issues, and an actual litigation thereof in the first suit.") (emphasis added).

Other cases state that for collateral estoppel to apply, "the standard of proof in the prior action must have been at least as stringent as the standard of proof in the later case." *See In re Bentov*, 514 B.R. at 912–13 (citing *St. Laurent v. Ambrose* (*In re St. Laurent*), 991 F.2d 672, 676 (11th Cir. 1993), an Eleventh Circuit case interpreting Florida law). The Court finds that the burdens of proof in the two proceedings are the same. As stated previously, fraud in the inducement under Florida law requires proof by a preponderance of the evidence, which is the same burden of proof required to prove nondischargeability under § 523(a)(2)(A).

Finally, some Florida cases include a collateral estoppel requirement that the prior judgment was a final judgment entered by a court of competent jurisdiction. *See Prudential Ins. Co. of Am. v. Turkal*, 528 So. 2d 487, 488 (Fla. Dist. Ct. App. 1988) ("[c]ollateral estoppel may be applied only where the parties and issues are identical and where a particular matter has been fully litigated and determined in a prior litigation which has resulted in a final decision in a court of competent jurisdiction.") The Court finds that this element is also satisfied—Burroughs did not appeal the default judgment, rendering it a final decision, and the Florida court was of competent jurisdiction.

(concluding that it would be manifestly unjust to find that the debtor was collaterally estopped from litigating the dischargeability of a child support obligation established by default judgment in a state court paternity action when a subsequent DNA test proved that the debtor was not the child's father).  Burroughs contends that the manifest injustice exception should be applied because "[a]s of now, all GPB has proof of is the [d]ebtor's discovery sanctions in an unliquidated amount . . . if the [d]ebtor is to be further sanctioned by having the debt to GPB made nondischargeable, the [d]ebtor has the right to defend against the merits of GPB's case."  (Dkt. No. 28.)  The Court disagrees.  The facts in the instant case bear no resemblance to the "unusual and unfortunate" situation before the court in *In re Harnett*.  *See In re Bentov*, 514 B.R. at 915.  Based on the record before the Court on summary judgment, the Court finds that the application of collateral estoppel results in no manifest injustice and therefore declines to impose the exception.

For all of the above-stated reasons, the Court finds that collateral estoppel prevents the relitigation of the debtor's liability to GPB for fraud in the inducement and the resulting debt is nondischargeable under § 523(a)(2)(A).  However, "an adversary proceeding respecting dischargeability consists of three elements: liability, damages, and dischargeability."  *Sterling Factors, Inc. v. Whelan*, 245 B.R. 698, 708 (N.D. Ga. 2000) (citing *St. Paul Fire & Marine Ins. Co. v. Magnafici* (*In re Magnafici*), 16 B.R. 246, 252–53 (Bankr. N.D. Ill. 1981); *Perino v. Cohen* (*In re Cohen*), 92 B.R. 54, 60 (Bankr. S.D.N.Y. 1988)).  Here, only two of the three components have been conclusively established.  In the default judgment, the state court "enter[ed] judgment *on liability* against Mr. Burroughs on [HRD's] Counterclaim.  Because the Counterclaim seeks unliquidated damages, the [c]ourt will, at a later time, conduct a trial on damages."  (Dkt. No. 26-7) (emphasis added).  HRD's counterclaim contained multiple counts, one of which—fraud in the inducement—has resulted in a nondischargeable debt under § 523(a)(2)(A) for the reasons already stated.  However, that debt remains unliquidated, and it is unknown how much of the judgment was the proximate result of the false representations.

Although the state court scheduled a trial on damages, the day before the trial was to begin, HRD and Burroughs submitted to the court an agreed judgment in the amount of $800,000, and the court entered that judgment in lieu of determining damages at trial. The agreed judgment referenced none of HRD's causes of action against the debtor. Rather, it stated that HRD "hereby recovers damages and Final Judgment is hereby entered against Counter-Defendant HUNTER MATTHEW BURROUGHS ("Burroughs") . . . in the total amount of Eight Hundred Thousand ($800,000.00) and xx/100 U.S. Dollars, inclusive of all court costs and taxable attorney's fees . . . ." (Dkt. No. 26-8.) Based on the language in the agreed judgment, the Court is unable to determine what portion of the $800,000 is attributable to Count III of HRD's counterclaim for fraud in the inducement (versus the portions potentially attributable to the other counts for which Burroughs was also deemed liable in the default judgment). *See Tobin v. Labidou* (*In re Labidou*), No. 09–01287–EPK, 2009 WL 2913483, *1 (Bankr. S.D. Fla., Sept. 8, 2009) (denying summary judgment because the court found it "impossible to tell whether any part of the damages awarded in the state court judgment were attributed to a claim excepted from discharge in this bankruptcy case."); *see also In re Bentov*, 514 B.R. at 915 (opining that the *Labidou* court "could have invoked collateral estoppel to grant partial summary judgment as to liability because once the default final judgment was entered, the fraud allegations in the complaint were deemed admitted pursuant to Florida law.")

For these reasons, the Court grants summary judgment in favor of GPB as to liability and nondischargeability under § 523(a)(2)(A) but denies summary judgment as to damages. The Court will next turn to the application of collateral estoppel in relation to GBP's cause of action under § 523(a)(6).

### B.  11 U.S.C. § 523(a)(6)

As the Court stated in its analysis of collateral estoppel in connection with § 523(a)(2)(A), the issue at stake in this adversary proceeding must be identical to the issue in the state court proceeding to satisfy the first element required under Florida law. Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(6).

> A nondischargeability action under § 523(a)(6) has three elements: (1) the debtor caused an injury to the creditor; (2) the injury must have been

willfully inflicted—that is, the debtor must have desired the injury or must
have been substantially certain that his conduct would result in the injury;
and (3) the debtor's actions must have been malicious. *See In re Patch*,
526 F.3d 1176, 1180–81 (8th Cir. 2008). The party seeking to prevent
discharge bears the burden of showing each element by a preponderance
of the evidence. *Id.* at 1180.

*Luebbert v. Glob. Control Sys. Inc.* (*In re Luebbert*), 987 F.3d 771, 778 (8th Cir. 2021).
Unlike HRD's claim of fraud in the inducement, the elements of which closely mirrored
those required for nondischargeability under § 523(a)(2)(A), HRD's counterclaim does
not state a cause of action with elements the same as, or even similar to, those required
under § 523(a)(6). Therefore, the Court will look to the default judgment to determine if
the state court found a willful and malicious injury to HRD in the context of the litigation
fraud that the debtor committed during discovery.

To satisfy the first requirement under § 523(a)(6), the debtor must have caused an injury
to HRD. The state court found that Burroughs's fraud during discovery "improperly
hampered [HRD's] discovery efforts." (Dkt. No. 26-7.) The Court finds that this is an
injury that the debtor caused to HRD.

To satisfy the second requirement under § 523(a)(6), the injury must have been willfully
inflicted. "To meet the willfulness requirement, there must be 'proof that the debtor
desired to bring about the injury or was, in fact, substantially certain that his conduct
would result in the injury that occurred.'" *In re Luebbert*, 987 F.3d at 781 (quoting *In re
Patch*, 526 F.3d at 1180–81). "This means that there must have been a 'deliberate or
intentional invasion of the legal rights of another.'" *Id.* (quoting *Rousell v. Clear Sky
Prop., LLC.* (*In re Roussel*), 829 F.3d 1043, 1047 (8th Cir. 2016)). Here, the state court
found by clear and convincing evidence that Burroughs "intentionally doctored critical
pieces of evidence . . . intentionally concealed responsive documents that he had an
obligation to produce . . . intentionally gave false interrogatory responses . . . [and,]
intentionally perjured himself at his deposition." Because the state court found that the
debtor intentionally thwarted HRD's discovery efforts in the above-described ways, this
Court finds that the injury was willful.

To meet the third requirement under § 523(a)(6), the debtor's actions must have been malicious.  "Malice requires 'conduct targeted at the creditor at least in the sense that the conduct is certain or almost certain to cause harm.'"  *Id.* (quoting *Waugh v. Eldridge* (*In re Waugh*), 95 F.3d 706, 711 (8th Cir. 1996)).  Burroughs contended that he lied during discovery only because he "didn't want to confuse the real issues on this case" which Burroughs characterized as him not being paid the amount that the parties had agreed upon.  (Dkt. No. 26-7.)  The court rejected this assertion and found that Burroughs's fraud "permeated the entire case."  Because the court found the debtor's conduct to be pervasive and fraudulent as to both the court and HRD, this Court finds that Burroughs's conduct was targeted at HRD.  Burroughs's discovery fraud was aimed, at least in part, at preventing HRD from prevailing on its counterclaim against him.  For these reasons, the Court finds that the issue of discovery fraud in state court meets the requirements to prove a cause of action under § 523(a)(6) in this proceeding, satisfying the first element of collateral estoppel.

To satisfy the second element of collateral estoppel in regard to § 523(a)(6), the issue must have been "actually litigated" in state court.  *See Aronowitz*, 174 So.3d at 1066.  The Court finds that this element is satisfied.  Although Burroughs asserted his Fifth Amendment privilege against self-incrimination and refused to answer questions during the hearing on HRD's motion to strike his pleadings for fraud, Burroughs nonetheless attended the hearing, with counsel.  Therefore, the Court finds that the issue was actually litigated in state court, satisfying the second element of collateral estoppel.

Similarly, the Court finds that the third element of collateral estoppel is met here.  The determination that Burroughs committed fraud on the court and HRD was the primary focus of the court's order on HRD's motion to strike the debtor's pleadings for fraud and the resulting entry of the default judgment.  Therefore, such determination was a critical and necessary part of the court's order.

Finally, the Court finds that Burroughs had a full and fair opportunity to litigate the issue of his discovery fraud, satisfying the fourth element of collateral estoppel.  As stated

above, he attended the hearing on this issue with his attorney.  Although he exercised his right not to testify to avoid incriminating himself, he nonetheless had a full and fair opportunity to participate in the litigation.

For all of these reasons, the Court finds that collateral estoppel applies to the debtor's liability under § 523(a)(6) for discovery fraud.  However, like the Court found in relation to § 523(a)(2)(A), the amount of the debt arising from Burroughs's willful and malicious injury under § 523(a)(6) has not been established, at least according to the record before the Court on summary judgment.  The state court awarded no punitive damages to HRD but did order Burroughs to "pay to [HRD] the reasonable attorney's fees and costs incurred by [HRD] with respect to Mr. Burroughs' September 24, 2020 deposition."  The Court has no evidence regarding the amount of the attorney's fees and costs related to the September 24 deposition.  It is possible that these fees and costs comprise part of the $800,000 agreed judgment which stated that it was "inclusive of all court costs and taxable attorney's fees."  However, even if agreed judgment includes these specific attorney fees and costs, the Court has no way to determine the portion of the agreed judgment that should be attributed to them and therefore deemed nondischargeable.

In sum, the Court finds that collateral estoppel applies to establish the debtor's liability under § 523(a)(6), but only in regard to the reasonable attorney's fees and costs awarded by the state court as a result of the debtor's discovery fraud.[8]  The Court finds such debt, in an amount to be determined at trial, to be nondischargeable.

## V.  Conclusion

For all of the above-stated reasons, the Court grants summary judgment to GPB as to the debtor's liability under § 523(a)(2)(A) and finds that such debt is nondischargeable.  The Court also grants summary judgment to GPB as to the debtor's liability under § 523(a)(6)

---

[8]  This order does not preclude GPB from proving other bases for nondischargeability under § 523(a)(6) at trial, it merely denies summary judgment under this subsection except as to the attorney's fees and costs awarded in the default judgment in an amount to be determined at trial.

in relation to the reasonable attorney's fees and costs awarded to HRD in the default judgment and finds such debt nondischargeable.  The Court denies summary judgment as to damages on both causes of action, and it will determine the amount of the debts at a trial to be scheduled by subsequent notice.

IT IS SO ORDERED.

Honorable Bianca M. Rucker
United States Bankruptcy Judge
Dated: 06/18/2025

cc:  Geoffrey B. Treece, attorney for GPB Debt Holdings II, LLC
     Stanley V. Bond, attorney for debtor
     Hamilton M. Mitchell, chapter 7 trustee
     United States Trustee